FILED

JUL 29 2015

CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY ______ DEPUTY

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**MIDLAND-ODESSA DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | § | |
| | § | |
| **v.** | § | **P-15-CR-275** |
| | § | |
| **CRISTIAN ESCARCEGA,** | § | |
| **Defendant.** | § | |

**MEMORANDUM OPINION DENYING DEFENDANT'S MOTION TO SUPPRESS**

Before the Court is Defendant Cristian Escarcega's Motion to Suppress, filed July 8, 2015. (Doc. 16). Defendant is charged with one count of aiding and abetting the possession with intent to distribute 100 kilograms or more of marijuana. (Doc. 9). In his suppression motion, Defendant challenges the validity of the cell phone search in this case, which was initially made at the Port of Presidio border stop as Defendant attempted to enter the United States. He seeks suppression of evidence obtained from his cell phone as well as any post-arrest statements. The Court held a hearing on July 27, 2015, where it denied Defendant's Motion to Suppress. The Court's Memorandum Opinion now issues.

**Background**

On March 15, 2015, Special Agent Will Werner from Homeland Security Investigations (HIS) was conducting surveillance on a Ford F-350 in Presidio, Texas, near the Texas-Mexico border. Special Agent Werner had received information the F-350 was loaded with marijuana. On that day, Special Agent Werner spotted a black Jeep parked near the F-350's residence and further noticed the F-350 had been moved from the driveway to the street. At that time, Special Agent Werner recognized Mario Morales, an individual Special Agent Werner knew was involved in narcotics trafficking, and noticed he was sitting in the passenger seat of the Jeep. Special Agent Werner next spotted an individual (Juan Garcia a.k.a. "Gordo") walking away

from the pickup. When a marked Border Patrol vehicle passed by, both individuals left the area. A cooperating individual later identified "Gordo" as the person who walked away from the F-350 on March 15, 2015. After learning this information, Special Agent Werner confirmed through a database search that Mr. Morales and Defendant had indeed crossed from Mexico into the United States through the Port of Presidio in Mr. Morales' Jeep with a third individual named Juan Garcia a.k.a. "Gordo."

On March 16, 2015, after a canine alert to the presence of narcotics, Border Patrol agents discovered 200.9 kilograms of marijuana in the abandoned Ford F-350 truck in Presidio, Texas, near the border. Mr. Morales was later questioned concerning his involvement in narcotics trafficking pertaining to the F-350. He was arrested and indicted on May 7, 2015, for transporting illegal aliens and for aiding and abetting the possession with intent to distribute marijuana. Mr. Morales admitted his involvement in a drug trafficking organization, implicating Defendant in the process. Specifically, Mr. Morales stated he and Defendant were hired to transport an individual named "Gordo" to the Ford F-350. "Gordo" was then to take the truck to Odessa, Texas, to deliver the marijuana hidden inside. However, after arriving at the F-350, "Gordo" abandoned the vehicle, spooked by a marked Border Patrol vehicle he observed patrolling the street near the F-350.

On May 7, 2015, Defendant attempted to enter the United States from Mexico through the Port of Presidio, but was stopped at the border and referred to secondary. There, Special Agent Werner asked Defendant to consent to an interview, to which Defendant agreed. Defendant was informed he was not under arrest and was free to terminate the interview at any time. Defendant further acknowledged he was answering questions knowingly and voluntarily. During the interview, Defendant was confronted with pictures of the Ford F-350 and asked about

his involvement in the drug trafficking organization for which Mr. Morales had been indicted. After Special Agent Werner confronted Defendant for being untruthful, Defendant acknowledged he was present when Mr. Morales drove "Gordo" to the truck, but that Defendant was "fucked up" at the time. Defendant subsequently terminated the interview and left, however, his cell phone was detained pursuant to the Border Search Authority after a cursory search revealed evidence of Defendant's involvement in a drug trafficking scheme.

On May 12, 2015, Special Agent Werner applied for a search warrant for Defendant's cell phone, which he received and then executed on May 14, 2015. Multiple text messages on the phone between Defendant and Mr. Morales implicated Defendant in the drug smuggling conspiracy, for which Defendant is presently charged.

**Discussion**

Defendant challenges the warrantless search of his cell phone at the border, as well as his seizure. (Doc. 16). The Fourth Amendment to the United States Constitution provides in pertinent part that

> [t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause....

The Supreme Court has determined that warrantless searches and seizures are *per se* unreasonable unless they fall within a few narrowly defined exceptions. *Coolidge v. New Hampshire,* 403 U.S. 443, 454–55 (1971). One important exception is the "border search exception." Under this exception, a governmental officer at the international border may conduct routine stops and searches without a warrant or probable cause because the United States as a sovereign state has the right to control what persons or property crosses its international borders. *See United States v. Ramsey,* 431 U.S. 606, 616 (1977); *United States v. Cardenas*, 9

F.3d 1139, 1147–48 (5th Cir. 1993); *see also United States v. Montoya de Hernandez,* 473 U.S. 531, 538 (1985) ("[T]he Fourth Amendment's balance of reasonableness is qualitatively different at the international border than in the interior."). Thus, a routine search made at the border may be made without probable cause or any suspicion to justify the search. *United States v. Sandler,* 644 F.2d 1163, 1167–69 (5th Cir. 1981) (en banc). This includes warrantless searches of cell phones at the border. *See United States v. Pickett*, 598 F.3d 231, 233, 234 (5th Cir. 2010) (ICE agents relied on border search exception to search contents of defendant's hard drives, USB drives and memory cards).

All of Defendant's arguments and claims effectively rest on case law that does not apply to border stops and searches. Defendant contends the Government bears the burden of proving the existence of reasonable suspicion and probable cause for the stop and seizure respectively. This is incorrect. The Government bears the burden of proving the warrantless stop and search were reasonable under some exception to the warrant requirement. Here, that exception is clearly the "border search exception." Because the stop of Defendant and search of his cell phone occurred at the border as Defendant attempted to enter the United States, neither reasonable suspicion nor probable cause were requirements to stopping Defendant and briefly searching the contents of his cell phone. *See Ramsey,* 431 U.S. at 616; *Montoya de Hernandez*, 473 U.S. at 537. Accordingly, both the stop and search were constitutionally valid.

However, Defendant suggests the "border search exception" has been limited by the recent holdings in *Riley v. California*, 134 S. Ct. 2473, 2495 (2014), where the Supreme Court held law enforcement officers may not search a cell phone without a warrant, consent, or exigent circumstances, specifically prohibiting the practice of cell phone searches incident to arrest. (Doc. 16 at 3–4); *Riley*, 134 S. Ct. at 2495. The Court notes that the situation at hand is factually

different from *Riley* as the search was not incident to arrest and occurred at the border where the searches are deemed "reasonable simply by virtue of the fact that they occur at the border." *See United States v. Ramsey*, 431 U.S. 606, 621 (1977). In fact, a border search is already an exception to the general warrant requirement for searches. Therefore, the Court finds *Riley* did not alter the force of the "border search exception" and the stop and search of Defendant's cell phone was reasonable "by virtue of the fact that [it] occur[red] at the border." *See Ramsey*, 431 U.S. at 621.

Defendant further cites *United States v. Cotterman*, 709 F.3d 952 (9th Cir. 2013) (en banc)—pointing out that the Supreme Court denied a petition for writ of certiorari in that case—for the proposition that an "anything goes at the border" approach to stops and searches is impermissible. (Doc. 16 at 5). Defendant's suggestion is unpersuasive for two reasons: (1) *Cotterman* involved a factually different scenario than the one at hand, and (2) *Cotterman* expressly permits the type of search involved here.

In *Cotterman*, the defendant was stopped at the border because of his prior convictions related to sexual misconduct for a minor. *Cotterman*, 709 F.3d at 957. His name was flagged to alert border authorities to potential child pornography possession. *Id.* After a cursory search of Cotterman's laptop in which several password protected files were discovered, the laptop was retained without warrant to undergo a forensic examination. *Id.* at 957–58. The Ninth Circuit held that the initial cursory inspection of the laptop and its files, even without suspicion, were permissible under the "border search exception," however, it held the forensic examination was not an extension of the "border search exception." *Id.* at 961. Had the search ended prior to the forensic examination, the Ninth Circuit stated the search would have been permissible. *Id.*

These facts contrast heavily with the ones at hand. Here, Defendant's cell phone was searched briefly, just as the initial search of the laptop in *Cotterman*. However, unlike *Cotterman*, here, evidence of Defendant's involvement in criminal activity was discovered during the cursory search and Special Agent Werner then obtained a search warrant to conduct a further search. Even if this Court adhered to Ninth Circuit precedent, which is certainly not binding, *Cotterman* would support this Court's decision to uphold the search of the cell phone because the Ninth Circuit conceded that the initial search of Cotterman's laptop was valid under the "border search exception." *See Cotterman*, 709 F.3d at 960–61. It was the warrantless forensic examination of the laptop that exceeded the limitations of the "border search exception" and with which the Ninth Circuit disapproved. *Id.* And while having reasonable suspicion and probable cause are not requirements to initiate a border stop and search, both were present here. Prior to meeting with Special Agent Werner, Defendant had been implicated by Mr. Morales in the drug smuggling organization and particularly in the events surrounding the abandoned F-350 in Presidio, Texas. Border Patrol had already confirmed that Defendant had crossed the border with Mr. Morales and a third individual the day the F-350 was discovered and abandoned as Mr. Morales explained. Further, prior to seizing the cell phone, Defendant acknowledged his presence in the vehicle when Mr. Morales drove "Gordo" to the marijuana-laden F-350, but Defendant claimed he was simply "fucked up." Special Agent Werner was aware of all of this. Therefore, Defendant's claims would all alternatively fail under the erroneous standard he would apply to his situation.

Finally, Defendant's assertion that the Government bears the burden of proving Defendant's consent to speak to authorities during the secondary interview at the border is equally invalid for the same reasons stated above: a seizure at the border is presumptively

reasonable by virtue of its occurrence at the border. *See Ramsey*, 431 U.S. at 621. Alternatively, the facts indicate that Defendant was advised he was not under arrest, he was free to leave, and Defendant voluntarily and knowingly consented to speak with Special Agent Werner. In fact, Defendant proved the interview was voluntary and consensual when he later terminated the interview and left without being arrested.

**Conclusion**

Accordingly, the Court denies Defendant's Motion to Suppress. (Doc. 16).

**It is so ordered.**

**Signed this 29 day of July, 2015.**

**Robert Junell**
Senior United States District Judge